# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON

ANITA LYNN CALL,

    Plaintiff,

v.     Civil Action No. 2:17-cv-2292

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

### Background

Claimant, Anita Lynn Call, filed an application for DIB on April 1, 2014. Claimant alleged disability beginning March 1, 2014.[1] The claim was denied initially on July 29, 2014, and upon reconsideration on October 6, 2014. Claimant filed a request for hearing on November 4, 2014. A hearing was held on June 15, 2015. Claimant appeared in Huntington, West Virginia and an Administrative Law Judge (ALJ) presided over the hearing from Saint Louis, Missouri. The ALJ denied Claimant's application on August 20, 2015. On October 19, 2015, Claimant requested a

---

[1] On June 18, 2015, Claimant amended her alleged onset date from March 1, 2014 to June 1, 2014 (Tr. at 259).

review of the ALJ's decision by the Appeals Council (AC). The AC denied Claimant's request for review on February 14, 2017. On April 11, 2017, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since June 1, 2014 (Tr. at 15). Claimant meets the insured status requirements of the Social Security Act through March 31, 2019. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the following severe impairments: asthma; chronic obstructive pulmonary disease; lung nodule; obstructive sleep apnea; depressive disorder; anxiety disorder; obesity; and venous stasis syndrome (Tr. at 16). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity to perform less than the full range of sedentary work with the following limitations: lifting up to 10 pounds occasionally, standing and walking for about 2 hours and sitting for up to 6 hours in an 8-hour workday. Claimant is able to sit no more than 60 minutes at one time and stand no more than 30 minutes at one time. Claimant is able to occasionally stoop, balance and climb ramps or stairs. Claimant cannot crawl, crouch, kneel or climb ladders, ropes or scaffolds. Claimant can perform work that does not involve concentrated exposure to extreme cold, heat, wetness, humidity, excessive vibration, moving machinery, unprotected heights, chemicals, poorly ventilated areas, or environmental irritants such as fumes, odors, dusts and gases. Claimant is able to perform simple, routine and repetitive tasks in an environment free of fast-paced production requirements, involving only simple work related

decisions and routine workplace changes (Tr. at 18). At the forth inquiry, the ALJ found that Claimant cannot perform past relevant work (Tr. at 22). At the fifth inquiry, the ALJ found that Claimant can perform jobs that exist in significant numbers in the national economy such as table worker and weigher (Tr. at 23). On this basis, Claimant's application was denied (Tr. at 23-24).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on November 24, 1978. She graduated from high school. On the date of the hearing, Claimant weighted approximately 400 pounds (Tr. at 61).

4

The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

Claimant was treated at Lincoln Primary Care primarily by Michael Grome, a physician's assistant, from April 2014 through June 2016 for a variety of conditions, including edema. On April 29, 2014, Claimant complained of chronic lower extremity swelling and pain in her calves (Tr. at 370). PA Grome noted that Claimant had a prior hospital admission at St. Mary's Medical Center. While at St. Mary's, Claimant had a complete cardiovascular workup which indicated that her exercise stress test (EST) and cardiac enzymes were normal and an echocardiogram revealed a normal ejection fraction (Tr. at 370). Claimant was prescribed support stockings for her edema but reported that she did not wear them because they were too hot (Tr. at 370). She also did not take diuretics, as she said they did not help her swelling and her blood pressure was normal. (*Id.*) She reported that her edema was relieved by elevating her legs and that she tried to avoid salt. (*Id.*) Claimant was advised by PA Grome to eat a diet low in salt (Tr. at 371).

On June 11, 2014, Claimant returned to PA Grome for a follow up appointment (Tr. at 406). Claimant noted that she had noticed small blisters on her pretibial region, which resolved with elocon cream and support stockings. She reported wearing her support stockings "most days," and this helped her edema. (*Id.*) She also indicated that her edema was relieved by elevating her legs. (*Id.*) On examination, Claimant had no edema and was ambulating normally (Tr. at 407). PA Grome instructed her to use her support stockings (Tr. 407).

On September 11, 2014, Claimant followed up with PA Grome and reported improvement with her leg pain, but it was worse at this time (Tr. at 654). She reported wearing her support stockings "most days" and elevating her legs. (*Id.*) Claimant complained of bilateral calf

tenderness but had no edema (Tr. at 655). Claimant ambulated normally, had no erythema (reddening of the skin), a negative Homan's sign and no evidence of infection. (*Id.*) She was instructed to use her support stockings daily (Tr. at 656).

On March 3, 2015, Claimant reported that her support stockings had worn out, and she requested a refill (Tr. at 698). On examination, despite her complaints of tenderness, Claimant's extremities had no edema (Tr. at 699). She had normal motor strength, normal squat strength, normal movement of all extremities, good range of motion in her knees and no objective synovitis. (*Id.*)

On April 7, 2015, Claimant admitted that she had not used her support stockings recently. (Tr. at 767). She also reported increased leg edema when taking Mobic for knee pain. (*Id.*) Although she complained of tenderness, Claimant had no edema. (*Id.*) On examination, Claimant ambulated normally and had normal motor strength, normal squat strength and normal movement of all extremities. (*Id.*) She was told to use her support stockings as advised (Tr. at 768). At a follow up with PA Grome in June 16, 2016, Claimant's examination again revealed normal strength and she continued to ambulate normally (Tr. at 850).

From March 2014 to May 2015, Claimant underwent treatment at Marshall Health for respiratory complaints. At these appointments, Fadi Alkhankan, M.D., generally noted that Claimant had normal skin and musculoskeletal examinations, without mention of edema (Tr. at 397, 492, 704, 728, 804-805, 814-815). Dr. Alkhankan ordered a CT of Claimant's knees, which showed no bony or articular abnormality and only "mild" tissue swelling (Tr. at 709). Rebecca Wolfe, M.D., of Marshall Health, noted severe lower extremity edema on only one occasion, however, Claimant's gait and station remained normal (Tr. at 719).

6

On May 15, 2014, Claimant underwent a physical consultative examination with Stephen Nutter, M.D. (Tr. at 379). Claimant reported pain and swelling in her legs, noting that diuretics did not help. (*Id.*) Claimant asserted that elevation helped somewhat, especially overnight when the swelling completely goes away (Tr. at 379).

On examination, Claimant appeared comfortable in the seated and supine positions (Tr. at 381). She ambulated with a normal gait, which was not unsteady, lurching, or unpredictable and she did not require a handheld assistive device. (*Id.*) Claimant had no evidence of peripheral vascular insufficiency or chronic venous status changes, such as pigmentation or ulceration. (*Id.*) Although she had pitting edema in both lower extremities, possibly +2, it was difficult to exactly qualify due to her obesity. (*Id.*) Dr. Nutter indicated that it was difficult to say if there was any swelling in the knees other than edema that started in the legs due to obesity (Tr. at 382). Dr. Nutter indicated that Claimant's edema in both legs was consistent with venostasis (Tr. at 383).

Examination revealed no calf tenderness, warmth, swelling, cord sign or Homan's sign, although she had some hair loss in the legs (Tr. at 382). Claimant's muscle strength was normal at 5/5; there was no evidence of atrophy; and her sensory modalities were well preserved (Tr. at 383).

She was able to walk on her heels and toes and perform tandem gait without balance difficulty, although she complained of ankle pain. (*Id.*) She performed 80% of a squat before stopping because of ankle pain and pain from her knees down her legs. (*Id.*)

On May 28, 2014, Rogelio Lim, M.D., a state agency physician, reviewed the record and opined that Claimant could perform a range of light work, with occasional climbing of ramps, stairs, ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and avoiding concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation and hazards (machinery, heights, etc.) (Tr. at 89-90). On

September 26, 2014, Subhash Gajendragadkar, M.D., another state agency physician, reviewed the record and affirmed Dr. Lim's opinion (Tr. 103-104). They did not assess limitations requiring that Claimant elevate her legs.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to consider all the medical evidence of record in making his disability determination (ECF No. 10). Claimant argues that the ALJ failed to consider the functional impact of Claimant's severe impairments, such as requiring her to elevate her legs. (*Id.*) Claimant avers that the ALJ failed to consider Claimant's explanation of why she did not take the diuretics or use support stockings as treatment for her obesity and venous stasis syndrome.

In response, Defendant asserts that substantial evidence supports the ALJ's evaluation of Claimant's residual functional capacity (RFC) (ECF No. 12). Defendant avers that the evidence of record supports a finding that Claimant was capable of a limited range of sedentary work with numerous postural, environmental and mental restrictions. Defendant asserts that additional limitations were not supported by the evidence of record. (*Id.*) Defendant asserts that the ALJ thoroughly reviewed the treatment notes of PA Grome in determining that further limitations due to edema were not supported by the record. Defendant asserts that the ALJ appropriately considered Claimant's conservative treatment for her edema. Defendant avers that substantial evidence supports the ALJ's RFC determination that Claimant displayed self-limiting behavior and sub-maximal effort during a functional capacity evaluation. (*Id.*)

RFC

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side

effects of medication. *Id.* at \*5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179-80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

An RFC refers to the most a claimant can still do despite her limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. §§ 416.945(a), 404.1545. The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3), 404.1527. For cases at the hearing level, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 416.946, 404.1546. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

## Discussion

Claimant asserts that "The ALJ made multiple reversible errors in this case when he failed to properly evaluate [Claimant's] subjective complaints and to consider all the evidence prior to

9

rejecting [Claimant's] need to elevate her legs due to severe lower extremity edema, a limitation that the vocational expert testified was work preclusive" (ECF No. 10). Claimant argues that the ALJ failed to consider her explanations for why she did not take the diuretics[2] or use support stockings. (*Id.*)

The ALJ noted that, despite Claimant's complaints of pain and swelling, her physical examinations with PA Grome consistently revealed no edema (Tr. at 19-21, 407, 655, 699, 767). During an office visit with Lincoln Primary Care on April 29, 2014, Claimant admitted that she does not use her support stockings "because they are too hot" (Tr. at 370). Claimant asserts that she experienced blisters in "the same area that would be covered by support stockings" (ECF No. 10). Additionally, PA Grome's treatment notes documented normal ambulation, normal motor strength, normal squat strength and normal movement of all extremities (Tr. at 407, 655, 699, 767, 850).

On June 11, 2014, PA Gromes' office notes reflect that Claimant improved compliance, wearing her support stockings "most days," which admittedly helped (Tr. at 19, 406). In September 2014, Claimant reported wearing her support stockings "most days," however, PA Grome instructed her to wear them daily (Tr. at 20, 656). Therefore, "most days" is not entirely compliant. PA Grome did not prescribe treatment beyond the stockings (Tr. at 20, 656). On April 17, 2015, PA Grome directed Claimant again to use support stockings as advised (Tr. at 20, 768). Here, where the treatment record reflected improvement with compliance with conservative treatment, the ALJ appropriately considered this factor in assessing the RFC. PA Grome noted, that Claimant's legs showed no evidence of infection, and that she had a negative Homan's sign,

---

[2] Claimant asserts that she stopped taking her diuretics because her blood pressure had stabilized. Claimant reported that she does not take a diuretic anymore because they do not help her swelling and because her blood pressure has been normal (Tr. at 370).

10

revealing no evidence of deep vein thrombosis (Tr. at 655). This evidence supported the ALJ's finding that, despite complaints of leg swelling, the treatment records did not establish debilitating symptoms (Tr. at 21).

Furthermore, the ALJ also discussed Claimant's improvement with the conservative treatment of support stockings, and her occasional non-compliance with this treatment recommendation (Tr. at 19-20). 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (the ALJ may consider the effectiveness of treatment used to alleviate symptoms); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *7 (S.S.A.) (an "individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015) (ALJ appropriately considered claimant's non-compliance as one factor in evaluating credibility).

Lastly, Claimant asserts that the ALJ "inexplicably omitted" evidence contained within Stephen Nutter, M.D.'s, consultative examination report (ECF No. 10). However, the ALJ appropriately considered Dr. Nutter's findings in assessing Claimant's RFC (Tr. at 20). The ALJ stated that the treatment records showed improvement in leg symptoms when using support stockings as recommended. (*Id.*) The ALJ noted that while Dr. Nutter observed pitted edema in both legs, Dr. Nutter did not provide an assessment of Claimant's work related abilities. Therefore, the ALJ gave Dr. Nutter's report "some weight," noting that it did not illustrate Claimant's symptoms throughout the relevant period. (*Id.*)

The ALJ was not required to include additional limitations in the RFC based on Dr. Nutter's opinion. Although, interestingly, neither Dr. Nutter nor any other physician opined that Claimant

would be required to elevate her legs due to her complaints of edema (Tr. at 379-84; *see also* Tr. at 89-90, 103-104). Such a limitation was therefore not supported by the record. More so, the Fourth Circuit does not require an ALJ to discuss every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.,* 769 F.3d 861, 865 (4th Cir. 2014). Where, as here, the ALJ stated that he has considered all of the evidence (Tr. at 13), "absent evidence to the contrary," a reviewing court should "take him at his word." *Id.* Indeed, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Id.*

Accordingly, substantial evidence supports the ALJ's analysis of Dr. Nutter's findings. The ALJ explained that Dr. Nutter's report contained no assessment of Claimant's work related abilities and the report was inconsistent with the treatment notes showing improvement in leg symptoms with treatment compliance (Tr. at 20).

Claimant asserts that the ALJ erred in his assessment of her RFC because he declined to include a limitation requiring Claimant to elevate her legs during the workday (ECF No. 10). However, substantial evidence supports the ALJ's RFC assessment, where he opined that despite her limitations, Claimant retained the ability to perform sedentary work, except she could sit for no more than 60 minutes at a time and stand no more than 30 minutes at one time; occasionally stoop, balance, and climb ramps or stairs; never crawl, crouch, kneel, or climb ladders, ropes, or scaffolds; with additional environmental and mental limitations (Tr. at 18). The ALJ found that these limitations fully accommodated Claimant's leg-related symptoms (Tr. at 21). Additional limitations, such as leg elevation, were not supported by the record.

### Credibility

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which

evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In making a credibility determination, the ALJ must follow a two-step analysis. "First, there must be objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis. At step one, the ALJ determined that "the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms" (Tr. at 113). Thus, the ALJ proceeded to step two and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." (*Id.*)

In assessing Claimant's RFC, the ALJ considered the functional capacity evaluation (FCE) performed by Michael Kennedy, a physical therapist at St. Mary's Medical Center, on April 16, 2015 (Tr. at 770-771). The FCE indicated that Claimant "demonstrated the ability to perform within the SEDENTARY Physical Demand Category based on the definitions developed by the US Department of Labor and outlined in the Dictionary of Occupational Titles (Tr. at 770).

The FCE reports that Claimant demonstrated consistent effort through only about 50% of the testing, which would "suggest significant observational and evidenced based contradictions resulting in consistency of effort discrepancies, self-limiting behaviors, and/or sub-maximal effort" (Tr. at 20, 770). Mr. Kennedy reported that "The functional results of this evaluation do not represent a true and accurate representation of this patient's overall physical capabilities." (*Id.*) Rather, the results represented a minimal level of functioning (Tr. at 770).

This Court cannot re-weigh the evidence and reach a different outcome because re-weighing of the facts is precluded by the Act. *See* 42 U.S.C. § 405(g). As shown above, there was ample evidentiary support for the ALJ's RFC determination. Because the ALJ's decision is supported by substantial evidence and is based upon a correct application of the law, it should be affirmed.

## Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from

the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 27, 2018

Dwane L. Tinsley
United States Magistrate Judge